IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| HONOLULU ACADEMY OF ARTS dba HONOLULU ART MUSEUM, a Hawaii non-profit corporation, | CIVIL NO. 15-00355 DKW-KSC |
| Plaintiff, | **ORDER GRANTING DEFENDANT GREENE'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| JOEL ALEXANDER GREENE, *et al.*, | |
| Defendants. | |

## ORDER GRANTING DEFENDANT GREENE'S MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

In 2004, the Honolulu Academy of Arts ("HAA") contracted to pay art collector Joel Greene an $80,000 annuity for life in exchange for five objects of Southeast Asian art.  Ten years later, HAA, for the first time, demanded written provenance relating to the five objects and suspended annuity payments until Greene complied with the demand.  When Greene did not comply, HAA brought this action, alleging claims for declaratory relief, breach of warranties, and unjust enrichment.  Greene counterclaimed for breach of contract, assumpsit, and declaratory relief, and now moves for summary judgment on the claims brought by

both sides.  Dkt. No. 26.  Because the Court finds that all applicable statutes of limitations have run on HAA's claims, and because HAA is in breach of the Annuity Agreement, the Court GRANTS Greene's Motion for Summary Judgment.

## BACKGROUND

### I.   Factual Background

#### A.   The 2004 Annuity Agreement

In April 2004, Greene proposed to provide HAA with certain Southeast Asian antiquities in exchange for an annuity.  Dkt. No. 32-11, Plf. Exh. 10. Stephen Little, then-Director of HAA, presented Greene's proposal to HAA's Collections Committee at its May 20, 2004 meeting.  Dkt. No. 27-10, Def. Exh. H at 5.  According to the minutes of that meeting, Little discussed Greene's proposal with "Eric Watanabe, Chief Financial Officer, and they agreed that it was essential to obtain an independent appraisal of the collection's current value, which would provide the base for the annuity; to do a check to determine if any pieces were illegally exported or listed as stolen; and to have a conservator review the condition of the pieces." *Id.*

At its August 5, 2004 meeting, the Collections Committee deemed "accomplished" the essential due diligence items it had set forth for the annuity

agreement that had been identified at the May 20, 2004 meeting.[1]  Dkt. No. 27-11, Def. Exh. I at 1.  As such, the "motion to approve the annuity agreement was passed."  *Id.* at 6.

On August 9, 2004, HAA and Greene completely executed a document entitled, "Honolulu Academy of Arts Charitable Gift Annuity Agreement for Joel Alexander Greene" ("Annuity Agreement"), which was drafted by counsel for HAA.[2]  Dkt. No. 27-2, Def. Exh. A.  The Annuity Agreement provided that HAA would pay Greene an annuity of $80,000, in quarterly installments, for the remainder of Greene's life.  *Id.*  In exchange, the Annuity Agreement acknowledged that Greene, "as evidence of his desire to support the work of the [HAA] and to make a charitable gift, has contributed to the Academy art works valued in the amount of one million two hundred sixty-nine thousand eight hundred forty-one [dollars] ($1,269,841.00), receipt of which is acknowledged, for the Academy's general purposes."  *Id.*  Although not expressly referenced in the Annuity Agreement, it is undisputed that the referenced "art works" are the five pieces of Southeast Asian art that the HAA had appraised prior to contract.  *See*

---

[1]As part of its due diligence, HAA consulted the "Art Loss Register" and received verification that, to the best of its knowledge, the works had not been "registered as stolen or missing" and that no "Claimant reported these works [as a loss]."  Dkt. No. 27-8, Def. Exh. F at HAA000170-173.  In addition, HAA obtained an independent appraisal of the antiquities in question from Thomas Murray of Asiatica Ethnographica.  Dkt. No. 27-9, Def. Exh. G.

[2]Greene signed a "Waiver of Counsel & Receipt" acknowledging that HAA's counsel prepared the Annuity Agreement and confirming that Greene waived his right to have the Annuity Agreement reviewed by his own counsel.  Dkt. No. 27-2, Def. Exh. A at 3; Greene Decl. ¶ 3.

3

Dkt. No. 27-3, Def. Exh. B.  The last paragraph of the Annuity Agreement provided: "Joel Alexander Greene and the Academy agree to execute and deliver any and all other documents necessary to carry out the terms of this Annuity Agreement and to conform the intent and purpose of this Annuity agreement with applicable laws."  Dkt. No. 27-2, Def. Exh. A at 2.

Greene shipped the five objects of art to HAA in July 2004.  Greene Decl. ¶ 5.  Little acknowledged, by letter dated November 12, 2004, HAA's satisfaction and acceptance of the five works: "I have just reviewed all of the gifts received by the Academy in 2004, and wish to formally acknowledge on behalf of the Trustees and the Staff of the Academy your gift to the Academy of five outstanding works of art from the high cultures of Southeast Asia."  Dkt. No. 27-3, Def. Exh. B.  HAA commenced payment under the terms of the Annuity Agreement on August 9, 2004.  Greene Decl. ¶ 6.

### B.    HAA's 2014-2015 Requests for Provenance Documentation

Ten years later, in a letter to Greene dated August 4, 2014, Stephan Jost introduced himself as the new director of HAA.  Dkt. No. 27-4, Exh. C.  Jost's letter expressed concern regarding the lack of written provenance for the items HAA had received from Greene that were subject to the Annuity Agreement and

requested assistance in establishing the provenance of those works.[3]  *Id.*  In late 2014, Jost followed up by meeting with Greene in Greene's San Francisco apartment to discuss HAA's request for documentation.  Jost Decl. ¶ 4.

On December 4, 2014, Jost sent Greene another letter, along with a copy of the Association of Art Museum Directors ("AAMD") 2013 Guidelines.  Dkt. No. 32-4, Plf. Exh. 3.  In the letter, Jost explained that HAA is "legally obligated to confirm the provenance of all art objects it receives as a donation or as funding for annuities" and gave several examples of "provenance establishing that archeological material has been out of its country of origin since November 17, 1970, or has been legally exported after that date[.]"  *Id.* at 1.

On December 12, 2014, Greene responded, assuring Jost that he was searching through his papers for the requested documentation.  Dkt. No. 32-5, Plf. Exh. 4.

On May 18, 2015, Jost contacted Greene once more, reiterating HAA's request for written provenance sufficient to establish clear title to the five works (and other art works) Greene had provided to HAA.  Dkt. No. 32-8, Plf. Exh. 7.

---

[3]As part of its counter-statement of facts, HAA asserts that federal agents from ICE/HSI contacted HAA in 2014 seeking information about objects it received from art dealer, Subhash Kapoor.  This investigation led HAA to inquire about written provenance for other objects in its collection not related to Kapoor, including those Greene had provided to HAA under the Annuity Agreement. *See* Dkt. No. 31 at 9.

Approximately one month later, on June 22, 2015, HAA's counsel sent a letter to

Greene informing him, among other things, that:

> [HAA's] agreement to provide you with a lifetime annuity was
> conditioned on the understanding that the items conveyed were
> authentic, that you had established the provenance of all the
> items, and that you had good title, as well as proper export
> documentation and import licenses.  Absent [HAA's] receipt of
> any of this information from you, unless and until you can
> provide verifiable documentation relating to these objects,
> [HAA] is compelled to suspend the quarterly annuity payments
> currently being made to you pursuant to the terms of the 2004
> Gifts Annuity Agreement.

Dkt. No. 27-5, Def. Exh. D.

Greene's counsel responded by letter dated July 8, 2015, disputing that the

AAMD's 2013 Guidelines imposed any legal obligations, and further disputing

HAA's contention that Greene's lifetime annuity was "conditioned" in the manner

described by HAA's attorneys.  Dkt. No. 27-6, Def. Exh. E.

### C.    Suspension of Annuity Payments

On June 30, 2015, HAA suspended annuity payments to Greene, claiming

that the Annuity Agreement was conditioned on Greene providing the written

provenance demanded by HAA.  Greene Decl. ¶ 8.  Those annuity payments

remain suspended.

## II.    Procedural Background

On July 31, 2015, HAA filed suit against Greene in the First Circuit Court,

State of Hawaii.  *See* Dkt. No. 1-1.  HAA subsequently filed a First Amended

Complaint on August 28, 2015, alleging claims for (1) declaratory relief; (2) breach of warranties; and (3) unjust enrichment.  Dkt. No. 1-3.

On September 8, 2015, Greene timely removed the action to this Court.  Dkt. No. 1.  Thereafter, on September 15, 2015, Greene filed his answer, concurrently asserting counterclaims for (1) breach of contract; (2) assumpsit; and (3) declaratory relief.  Dkt. No. 5.

On May 4, 2016, Greene moved for summary judgment on all claims asserted by HAA and all counterclaims asserted against HAA, arguing, in part, that HAA's claims were untimely.  Dkt. No. 26.  On June 17, 2016, HAA filed its opposition to Greene's Motion for Summary Judgment.  Dkt. No. 31.  On June 24, 2016, Greene filed his reply.  Dkt. No. 34.  The Court heard oral arguments on July 8, 2016.  Dkt. No. 36.

## STANDARD OF REVIEW

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case.  A 'genuine issue' of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Thrifty Oil Co. v. Bank of Am. Nat'l*

*Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

When evaluating a motion for summary judgment, the court must construe all evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). Thus, the moving party has the burden of persuading the court as to the absence of a genuine issue of material fact. *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must set forth "'significant probative evidence'" in support of its position. *T.W. Elec. Serv.*, 809 F.2d at 630 (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion," and can do so by either "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

## **DISCUSSION**

Greene moves for summary judgment on all claims, including his counterclaims against HAA. The Court addresses each claim in turn.

8

I.      **HAA's Claims in its First Amended Complaint**

A.      **Whether the Annuity Agreement Requires Written Provenance**

HAA argues that its claims accrued in 2015 when Greene breached an alleged "continuing obligation" to deliver "necessary" documents pursuant to the terms of the Annuity Agreement.   Dkt. No. 31 at 11-12.   According to HAA, the "necessary" documents include written provenance.  In response, Greene argues that the Annuity Agreement is "unambiguous and contains no provision requiring [] Greene to provide the documents HAA now demands."  Dkt. No. 34 at 7.  The Court finds that there are genuine issues of material fact as to whether the language of the Annuity Agreement is broad enough to include documentation of provenance.

HAA relies solely on the following clause in support of its position that the Annuity Agreement requires the provision of provenance: "Joel Alexander Greene and the Academy agree to execute and deliver any and all other documents necessary to carry out the terms of this Annuity Agreement and to conform the intent and purpose of this Annuity agreement with applicable laws."  Dkt. No. 27-2, Def. Exh. A at 2.  Based on this provision, HAA argues that Greene has an obligation to deliver documents establishing that the five pieces of art have been out of their country of origin since November 17, 1970, or were legally exported after that date.  As Greene highlights, the provision upon which HAA relies does

9

not explicitly reference documents relating to provenance or title.  If establishing provenance was as important to the underlying agreement as HAA now contends, then it would have been prudent to explicitly reference those items in the Annuity Agreement.  HAA's position essentially asks this Court to read into the Annuity Agreement terms and conditions that are simply not there.  Nevertheless, the Court acknowledges that reasonable minds could differ as to whether providing provenance documentation was part and parcel of the Annuity Agreement. Because the Court finds that the clause cited by HAA is ambiguous, and can be reasonably read in the broad manner urged by HAA, the Court cannot conclude that Greene is entitled to summary judgment on the issue of whether the Annuity Agreement requires the provision of provenance.  *Aloha Petroleum, Ltd, v. Nat'l Union Fire Ins. Co.*, 25 F. Supp. 3d 1305, 1311-12 (D. Haw. 2014) ("Under the principles of general contract interpretation, '[a] contract is ambiguous when the terms of the contract are reasonably susceptible to more than one meaning.'") (quoting *Airgo, Inc. v. Horizon Cargo Transp. Inc*, 66 Haw. 590, 594, 670 P.2d 1277, 1280 (1983)); *Evergreen Eng'rg, Inc. v. Green Energy Team LLC*, 884 F. Supp. 2d 1049, 1060 (D. Haw. 2012) ("'Where the terms of a contract are ambiguous, the ambiguity raises the question of the parties' intent, which is a question of fact that will often render summary judgment inappropriate.'" (quoting *Witting v. Allianz, A.G.*, 112 Hawaii 195, 201, 145 P.3d 738, 744 (App. 2006)).

### B.    Whether HAA's Claims Are Barred by the Statute of Limitations

Even assuming that the Annuity Agreement requires Greene to provide written provenance, the remaining question is the length of that alleged obligation. In other words, the issue presented is whether the Agreement requires Greene to provide written provenance more than ten years after its execution.  The Court holds that it does not: each of HAA's claims is barred by the statute of limitations.

### 1.    Declaratory Relief

Claims based upon a breach of contract are governed by a six-year statute of limitations, as are claims for declaratory relief.  *See* HRS § 657-1.  HAA's claim for declaratory relief is based on the assertion that Greene breached the Annuity Agreement when he refused to provide written provenance "in July 2015 when Greene first disclaimed any obligation to provide documentation[.]"  Dkt. No. 31 at 17.  HAA claims that this alleged refusal in 2015 triggered the applicable statute of limitations.  *Id.*  The Court disagrees.

Under Hawaii law, the time to institute an action based upon a claim for breach of contract generally begins when the contract is breached.  *Au v. Au*, 63 Haw. 210, 219, 626 P.2d 173, 180 (1981).  "[W]here a duty imposed prior to a limitations period is a continuing one, the statute of limitations is not a defense to actions based on breaches of that duty occurring within the limitations period[.]"

*Dominguez v. Price Okamoto Himeno & Lum*, 2009 WL 1144359 (App. Apr. 29, 2009) (SDO) (internal quotations marks and citation omitted).

The Court acknowledges that the Annuity Agreement contains a provision requiring Greene to execute and to deliver "any and all other documents necessary" to effectuate the Annuity Agreement and "to conform the intent and purpose of this Annuity Agreement with applicable laws." Dkt. No. 27-2, Def. Exh. A at 2. Notably, the provision lacks any durational time frame. The absence of a time frame, however, certainly does not lead to the conclusion that the obligation lasts in perpetuity. No authority has been provided that supports that proposition, and, indeed, HAA's counsel clarified at the hearing that it was not suggesting that such a perpetual obligation exists. The Court holds that the provision relied on by HAA does not constitute a "continuing obligation" because the language does not reflect a "continuing performance over a period of time," *id.* at *4 (internal quotation marks and citation omitted); rather, it reflects a mutual obligation to execute and deliver remaining documents necessary to complete the transaction.

Under this framework, if HAA had expected Greene to deliver written documentation, HAA should have requested or demanded such documentation within a reasonable time following the execution of the 2004 contract.[4] *See, e.g.,*

---

[4] Such documentation, if any existed, would have existed in 2004.

*In re Sing Chong Co., Ltd.*, 1 Haw. App. 236, 240, 617 P.2d 578, 581 (1980)

("[W]here an agreement does not provide time for performance it must be read as

requiring that performance be commenced within a reasonable time.").  Instead, by

letter dated November 12, 2004, HAA expressly acknowledged its satisfaction

with the objects that Greene had sent.  *See* Dkt. No. 27-3, Def. Exh. B.  Any breach

of contract premised on Greene's failure to provide provenance documentation

would have accrued no later than November 12, 2004 because HAA had an

opportunity to review the objects and the documents it had received, and should

have discovered on or before this date that the objects were not accompanied by

the written provenance it now seeks.[5]  Following HAA's November 2004 letter,

HAA did nothing, other than make the payments required by the Annuity

Agreement, for more than ten years, and did not file suit for more than eleven years

after the contract had been entered.  That is well beyond the six-year limitations

period.  *See Au*, 63 Haw. at 219, 626 P.2d at 180 ("In the case of an existing fact,

the breach [of contract] occurs when the contract is made.").

Moreover, there is no evidence that Greene somehow prevented HAA from

discovering earlier that HAA lacked provenance documentation for the items that

---

[5]Hawaii's Uniform Commercial Code also provides guidance as to when HAA's breach would
have accrued.  Under HRS § 490:2-309, "[t]he time for shipment or delivery or any other action
under a contract if not provided in this article or agreed upon *shall be a reasonable time*."  HRS
§ 490:2-309(1) (emphasis added).  "[W]here a warranty explicitly extends to future performance
of the goods and discovery of the breach must await the time of such performance the cause of
action accrues when the breach is *or should have been discovered*."  HRS § 490:2-725(2)
(emphasis added).

Greene had delivered, nor does HAA contend otherwise.  HAA has not presented this Court with any material fact or intervening law that would potentially justify HAA waiting 10 years before asking Greene for provenance documentation.

In sum, the Court concludes that HAA's claim for declaratory relief is time-barred, and Greene is entitled to judgment as a matter of law on this claim.

### 2.    Breach of Warranty

HAA's claim for breach of warranty encompasses both express and implied warranties.  The Court first addresses HAA's breach of express warranty claim, which is subject to a six-year statute of limitations.  *See* HRS § 657-1(1).

In an attempt to present its express contractual warranty claim as timely, HAA characterizes Greene's obligation to deliver any and all documents necessary to carry out the terms of the Annuity Agreement as a "future fact" that did not occur until 2014, when the "additional documents became necessary to conform the intent and purpose of the Annuity Agreement with applicable laws."  Dkt. No. 31 at 20.  The Court disagrees.  As previously discussed, there was no change in circumstances between 2004 and 2014 that would have prompted a legal need for provenance documentation in 2014, but not in 2004.  All of the laws relied on by HAA, including the National Stolen Property Act, 18 U.S.C. § 2314 *et seq.*, and the Convention on Cultural Property Implementation Act, 19 U.S.C. § 2601 *et seq.*,

have been the law for decades.  Accordingly, HAA's express warranty claim is time-barred.

Similarly, HAA's implied warranty claims as to legitimacy, title, and provenance are untimely.  HAA acknowledges that, as to its implied warranty claims, the four-year statute of limitations in HRS § 490:2-725 applies:

> (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued.  By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.
>
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach.  A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

HRS § 490:2-725(1)-(2).

Here, the Annuity Agreement was entered into in 2004, and Greene delivered the five pieces of art that same year without provenance documentation.  As such, any breach relating to the delivery of written provenance would have occurred in 2004, and the limitations period would have expired in 2008.  *See id.*  To save its breach of warranty claims from the applicable statute of limitations, HAA relies on *Balog v. Ctr. Art Gallery-Hawaii, Inc.*, 745 F. Supp. 1556 (D. Haw. 1990).  HAA's reliance on *Balog*, however, is misplaced.

15

In *Balog*, claims were brought by the plaintiffs almost 7 1/2 years after they had purchased certain art from an art gallery. *Balog*, 745 F. Supp. at 1558. After the plaintiffs had purchased the art, the defendants sent plaintiffs, over a period of several years, a "Confidential Appraisal-Certificate of Authenticity" for each work purchased. *Id.* In these mailings, defendants continued to maintain that the artworks were either exclusive originals or limited editions and that the artworks had appreciated in value above their original purchase price. *Id.* After the media reported that the representations defendants made regarding the artwork sold through their gallery might be false, plaintiffs investigated the allegations, and ultimately, filed suit against the defendants. *Id.* at 1559.

The defendants moved to dismiss the action on statute of limitation grounds. *Id.* In response, the plaintiffs argued that the statute of limitations for the causes of action alleged in the complaint was tolled by, among other things, defendants' continued action that amounted to fraudulent concealment. *Id.* The Court rejected the defendant's statute of limitations argument, concluding that:

> [D]efendants' certification of the authenticity of the artwork sold to the plaintiffs served as an explicit warranty of future performance sufficient to toll the applicable statute of limitations. Furthermore, in cases of this type, where buyers are sold artwork of such a value that it would be prohibitively expensive to obtain a verification of authenticity in addition to the representations of the seller, and where the seller is a merchant of such artwork, the buyers are justified in relying on those representations and their claim for breach of warranty will

16

> accrue at the time they discover or reasonably should have discovered that the artwork was not authentic.
>
> Furthermore, the defendants repeated mailings to the plaintiffs of certificates warranting the authenticity of the artwork sold to them made their conduct a continuing action which did not terminate until 1987. The plaintiffs' cause of action, filed in 1989, fell within the U.C.C.'s four-year statute of limitations.
>
> Finally, the defendants' affirmative conduct in mailing the certificates of authenticity served to prevent the plaintiffs from discovering their claim against the defendants, and as such constituted fraudulent concealment of the plaintiffs' claims. In such circumstances, any applicable statute of limitations is tolled.

*Id.* at 1573.

Unlike *Balog*, there is no evidence that Greene engaged in any type of fraudulent concealment, attempted to "lull" HAA into inaction, or communicated with HAA in any fashion in the ten years subsequent to the 2004 Annuity Agreement. The Court agrees with Greene that, "HAA should have been well aware of any alleged problems back in 2004 when it accepted the relevant pieces from Mr. Greene." Dkt. No. 24 at 19-20. HAA relies on communications between Jost and Greene as evidence that Greene "lulled" HAA into believing that he had provenance documentation and that it would be forthcoming. However, those communications all occurred in 2014 and 2015, long after all applicable statutes of limitations had run. Therefore, unlike the plaintiffs in *Balog*, HAA cannot claim that any of these communications "lulled" HAA into inaction or constituted

ongoing fraudulent concealment.  *Cf. Mauian Hotel, Inc. v. Maui Pineapple Co.*, 52 Haw. 582, 481 P.2d 310 (1971) ("[A] defendant cannot avail himself of the bar of the statute of limitations, if it appears that he has done anything that would tend to lull the plaintiff into inaction, and thereby permit the limitation prescribed by the statute to run against him.") (internal quotations marks and citation omitted).  As such, the Court does not find any reason to toll the running of the limitations period.

In sum, both HAA's express and implied warranty claims fail as a matter of law.

### 3.   Unjust Enrichment

HAA's claim for unjust enrichment is subject to a six-year limitations period under HRS § 657-1.  To succeed on a claim for unjust enrichment, a plaintiff must show: (1) it has conferred a benefit upon the defendant, and (2) that the retention of the benefit was unjust.  *State Farm Fire and Cas. Co. v. Chung*, 882 F. Supp. 2d 1180, 1192 (D. Haw. 2012).  The parties dispute when this cause of action accrued. Greene argues that HAA's claim for unjust enrichment would have accrued as soon as it began to pay the annuity it now claims was unjust, *i.e.*, in 2004.  Dkt. No. 26-1 at 17.  HAA relies on the "continuing violation doctrine," arguing that it provides an equitable exception to the filing requirement.  The Court finds that

HAA's reliance on the "continuing violation" doctrine is misplaced and that this cause of action accrued in 2004.

The continuing violation doctrine allows a plaintiff to base a claim on a series of related wrongful acts even if some of the wrongful acts fall outside of the limitations period. *See Allen v. Iranon*, 99 F. Supp. 2d 1216, 1238 (D. Haw. 1999) ("[T]he continuing violations doctrine tolls the statute of limitations for alleged violations that form part of a pattern of ongoing unlawful conduct.").   HAA argues that "Greene's course of fraudulent conduct all relates to a single subject" and "constituted a continuous attempt to repeatedly and fraudulently conceal their questionable provenance since 2004[.]"  Dkt. No. 31 at 26.  As previously discussed, there is simply no evidence that Greene took any action to fraudulently conceal any "questionable provenance" between 2004 and 2010, *i.e.*, during the applicable statute of limitations timeframe.  Indeed, according to the evidence presented, Greene took no action at all, nor did he make any renewed representations of any kind, between 2004 and 2014.  The only thing that Greene did during this entire ten-year time frame was continue to accept the quarterly annuity payments made by HAA.  The continuing violation doctrine does not apply under these circumstances.

In sum, HAA's claim for unjust enrichment is time-barred, and Greene is entitled to judgment as a matter of law on this claim.

19

## II.   <u>Greene's Counterclaims</u>

The Court now turns to Greene's counterclaims.  As set forth below, Greene is entitled to summary judgment as to all of his counterclaims against HAA.[6]

### A.   <u>Breach of Contract</u>

A breach of contract claim must set forth (1) the contract at issue; (2) the parties to the contract; (3) whether plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by defendant; and (5) when and how defendant allegedly breached the contract.  *See Evergreen Eng'rg, Inc.*, 884 F. Supp. 2d at 1059.  Greene claims that each of these elements has been satisfied, and the Court agrees.

It is undisputed that Greene and HAA entered into a contract in the form of the Annuity Agreement in 2004.  Under the terms of the Annuity Agreement, HAA agreed to provide Greene with a lifetime annuity of $80,000 per year, payable quarterly, in consideration of his gift of works that HAA valued at more than $1.269 million.  It is undisputed that Greene delivered the works to HAA in July 2004 and that HAA was satisfied with, even appreciative of, those works subsequent to delivery.  Greene contends that he therefore "fully perform[ed] the only consideration required of him under the Annuity Agreement."  Dkt. No. 26-1

---

[6]It is undisputed that Greene's counterclaims are timely.  In contrast to HAA's claims, Greene's counterclaims would have accrued when HAA unilaterally decided to stop making payments due to Greene under the Annuity Agreement and that did not occur until June 2015.

at 21.  HAA, however, disputes that Greene performed under the contract, arguing that "[t]he Annuity Agreement imposes continuing obligations upon Greene both to execute and to deliver any necessary documents to effectuate the agreement." Dkt. No. 31 at 28.  As previously discussed, challenges to Greene's performance under the Annuity Agreement stemming from any failure to provide provenance documentation are time-barred and were time-barred long ago.  As such, the Court concludes that, as a matter of law, Greene has performed under the contract.

As to the last two elements, the Court agrees that with Greene having performed under the contract, HAA "breached its obligations under the Annuity Agreement by failing to pay installments due under the Annuity Agreement starting with the payment due on June 30, 2015."  Dkt. No. 26-1 at 21; Greene Decl. ¶ 9-10.  Because there are no genuine issues of material fact, Greene is entitled to summary judgment on his breach of contract claim as a matter of law.

## B.    <u>Assumpsit</u>

Greene argues that he is entitled to judgment as a matter of law on his assumpsit counterclaim because all of HAA's claims against Greene and all of his counterclaims are in the nature of assumpsit.  Dkt. No. 26-1 at 21-23.  That is clearly the case.

Under Hawaii law, "an action in the nature of assumpsit includes 'all possible contract claims.'"  *Leslie v. Estate of Tavares*, 93 Hawaii 1, 5, 994 P.2d

1047, 1051 (2000) (quoting *Healy-Tibbitts Const. Co. v. Hawaiian Indep. Refinery, Inc.*, 672 F.2d 284, 286 (9th Cir. 1982)).  More specifically, "[a]ssumpsit is a common law form of action which allows for the recovery of damages for the non-performance of a contract, either express or implied, written or verbal, as well as quasi contractual obligations."  *Schulz v. Honsador, Inc.*, 67 Haw. 433, 435, 690 P.2d 279, 281 (Haw. 1984) (citation omitted), *overruled on other grounds*.  The focus is on the "substance" of the action, "rather than [on] the formal language employed or the form of the pleadings."  *Id.* at 436, 690 P.2d at 282 (internal quotation marks and citation omitted).  "The character of the action should be determined from the facts and issues raised in the complaint, the nature of the entire grievance, and the relief sought."  *Leslie*, 93 Hawaii at 6, 994 P.2d at 1052.

As should be evident by the Court's analysis of HAA's claims and Greene's counterclaims, the action at issue is in the nature of assumpsit.  Indeed, HAA does not contend otherwise, but rather, opposes on the basis that "[b]ecause Greene cannot prevail on his contract claim, he is not entitled to attorneys' fees."  Dkt. No. 31 at 28.  Through this order, however, the Court directs the entry of summary judgment in favor of Greene on his contract claim, rendering Greene the prevailing party.  Consequently, Greene is entitled to attorneys' fees.  *See* HRS § 607-14 (allowing for recovery of attorneys' fees on all claims "in the nature of assumpsit").

### C.    <u>Declaratory Relief</u>

Under 28 U.S.C. § 2201(a), the Court can "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Greene seeks a declaratory judgment that: (1) "he has fully performed his obligations under the Annuity Agreement"; (2) "HAA breached its obligation to pay the annuity it agreed to pay him when it halted payment effective June 30, 2015"; and (3) "HAA must pay Greene's annuity including all missed payments from June 30, 2015 forward and must continue to make all future payments due under the Annuity Agreement." Dkt. No. 26-1 at 23-24. HAA's objections to Greene's request for declaratory judgment have already been addressed in other sections of this order. Based on the analysis above, the Court concludes that Greene is entitled to summary judgment on his claim for declaratory relief.

### III.    <u>HAA's Request for a "Stay" Under Fed. R. Civ. P. 56(d)</u>

Lastly, the Court addresses HAA's request for a stay under Fed. R. Civ. P. 56(d). HAA's request for an administrative stay of the case is based on the fact that there is an ongoing Department of Homeland Security investigation involving the objects at issue under the Annuity Agreement. HAA argues that, given the lack of provenance documentation, it will be unable to defend against a forfeiture

action, and if repatriation is ordered, there will be a "complete failure of consideration[.]"  Dkt. No. 31 at 29.

The Court disagrees that the ongoing investigation justifies deferral of the Court's disposition.  As discussed at oral argument, HAA received appropriate consideration for the Annuity Agreement in 2004, and that conclusion is unaffected by whatever the results of DHS' 2016 investigation may be.   Because HAA has failed to provide a persuasive reason for the Court to administratively stay the case, HAA's request is DENIED.

## CONCLUSION

The Court hereby grants Greene's Motion for Summary Judgment (Dkt. No. 26) on all of HAA's claims and all of Greene's counterclaims.  The Clerk of Court is directed to close the case.

IT IS SO ORDERED.

DATED:  August 29, 2016 at Honolulu, Hawai'i.



_____
Derrick K. Watson
United States District Judge

_____
Honolulu Academy of Arts v. Greene; CV 15-00355 DKW-KSC; ORDER GRANTING DEFENDANT GREENE'S MOTION FOR SUMMARY JUDGMENT