IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HONOLULU ACADEMY OF ARTS dba HONOLULU ART MUSEUM, a Hawaii non-profit corporation, | ) ) ) | CIVIL NO. 15-00355 DKW-KSC |
| | ) ) ) | FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT/ |
| Plaintiff, | ) ) | COUNTERCLAIMANT JOEL ALEXANDER GREENE'S MOTION FOR |
| vs. | ) ) | ATTORNEYS' FEES, RELATED NON-TAXABLE COSTS, AND |
| JOEL ALEXANDER GREEN; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; AND DOES GOVERNMENTAL AGENCIES 1-10, | ) ) ) ) ) ) | PREJUDGMENT INTEREST |
| Defendants. | ) ) ) | |

FINDINGS AND RECOMMENDATION TO GRANT IN PART AND
DEN IN PART DEFENDANT/COUNTERCLAIMANT JOEL ALEXANDER
GREENE'S MOTION FOR ATTORNEYS' FEES, RELATED
NON-TAXABLE COSTS, AND PREJUDGMENT INTEREST

Before the Court is Defendant/Counterclaimant Joel

Alexander Greene's ("Defendant") Motion for Attorneys' Fees,

Related Non-Taxable Costs, and Prejudgment Interest, filed

September 13, 2016.  Defendant filed a Statement of

Consultation on September 26, 2016.  On October 11, 2016,

Plaintiff Honolulu Academy of Arts dba Honolulu Museum of Art

("Plaintiff") filed its Opposition.  Defendant filed his Reply

on October 25, 2016.  The Court finds this matter suitable for

disposition without a hearing pursuant to Rule 7.2(d) of the

Local Rules of Practice of the U.S. District Court for the

District of Hawaii ("Local Rules").  After careful

consideration of the parties' submissions and the applicable law, the Court HEREBY RECOMMENDS that the Motion be GRANTED IN PART AND DENIED IN PART, and that Defendant be awarded **$133,451.67** in attorneys' fees and tax, **$2,214.02** in non-taxable expenses, and **$6,682.47** in pre-judgment interest, for the reasons set forth below.

<u>BACKGROUND</u>

As the Court and the parties are familiar with the history in this case, the Court includes only those facts relevant to the disposition of Defendant's Motion.

On May 4, 2016, Defendant filed a Motion for Summary Judgment ("MSJ"), which was heard on July 8, 2016.

On August 29, 2016, U.S. District Judge Derrick Watson issued an Order Granting Defendant Greene's Motion for Summary Judgment ("SJ Order"), finding that: 1) each of Plaintiff's claims is barred by the statute of limitations; 2) Defendant is entitled to summary judgment on his breach of contract counterclaim; 3) the action is in the nature of assumpsit and Defendant is entitled to attorneys' fees; 4) Defendant is entitled to summary judgment on his declaratory relief counterclaim; and 5) Plaintiff is not entitled to an administrative stay of the case.

Judgment entered on August 30, 2016.

On October 20, 2016, this Court issued a Findings and Recommendation to Grant in Part and Deny in Part Plaintiff Honolulu Academy of Arts dba Honolulu Museum of Art's Objections to Defendant's Bill of Costs ("F&R"), recommending that Defendant be awarded $5,317.52 in costs.  Relevant to the instant Motion, the Court found that "Defendant could not be expected to have predicted or known that he would prevail, based solely on the exchange at the [summary judgment] hearing" and that "it was reasonable for Defendant to depose the individuals it did."  F&R, Doc. No. 70 at 12.

On November 18, 2016, Judge Watson issued an Order Adopting the F&R.  Doc. No. 76.

### DISCUSSION

Defendant requests $165,875.00 in attorneys' fees;[1] $2,170.00 for pre-suit negotiations involving out-of-state counsel; $2,214.02 in non-taxable costs; $7,964.00 in state excise tax; and $6,682.47 in pre-judgment interest.  Plaintiff argues that any fee award should be substantially reduced under the Court's inherent power, 28 U.S.C. § 1927, and Federal Rule of Civil Procedure ("FRCP") 16(f).

---

[1]  Plaintiff initially sought $169,025.00 in fees, but withdrew certain time entries.  Reply at 15.

3

Insofar as Judge Watson has already determined that Defendant is entitled to attorneys' fees, see SJ Order at 22, this Court need only evaluate the reasonableness of the requested fees and costs.  Before doing so, however, the Court shall address Plaintiff's contention that Defendant's fee request should be reduced to $31,523.50 pursuant to FRCP 16(f), the Court's inherent power, and § 1927.[2]

I.   Sanctions as a Basis to Reduce Defendant's Fee Award

    A.   FRCP 16(f)

Plaintiff argues that the fee award should be substantially reduced pursuant to FRCP 16(f) due to Defendant's failure to produce critical discovery documents, namely draft Warranty and Indemnification agreements created by Stephen Little, former Museum Director, in 2004 for each of the five Southeast Asian objects that Defendant gave to Plaintiff in exchange for an annual annuity, and related communications ("Little Documents").  Mr. Little produced these documents at his August 11, 2016 deposition.

---

[2]  As the Court noted in its F&R, discovery issues could have and should have been raised during the pendency of the litigation.  F&R at 13 n.4.  Plaintiff's challenges to Defendant's fee request appear to be an end run around Judge Watson's ruling that Defendant is entitled to attorneys' fees. Plaintiff cites specific instances of misconduct by Defendant that pertain solely to matters before Judge Watson.  Opp'n at 22.

Defendant admits error in failing to produce documents, but contends that Plaintiff could have obtained the Little Documents sooner had it not delayed in taking Little's deposition and that the Little Documents would not have changed the outcome of the litigation.

FRCP 16(f) authorizes "sanctions, including a reasonable attorney's fee, for failure to prepare for scheduling conferences and failure to cooperate in pre-trial orders."[3] In re Yagman, 796 F.2d 1165, 1187, as amended, 803 F.2d 1085 (1986), cert. denied, 484 U.S. 963 (1987).  It provides:

> (1) In General. On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney:
>
> > (A) fails to appear at a scheduling or other pretrial conference;
> >
> > (B) is substantially unprepared to

---

[3]  Plaintiff cites Ayers v. Richmond, 895 F.2d 1267, 1269 (9th Cir. 1990), in part for the proposition that a district court may impose sanctions in the amount of opposing counsel's costs for failure to comply with FRCP 16.  Opp'n at 21.  This may be true as a general proposition, but it is unclear how the minimal cost generally incurred in connection with the violations identified in FRCP 16(f) support a substantial reduction to a six-figure fee request.  Id. (awarding $749.00 as a sanction to compensate the defendants for their travel costs to attend the settlement conference that the plaintiff's attorney failed to attend).

> participate--or does not participate in good faith--in the conference; or
>
> (C) fails to obey a scheduling or other pretrial order.
>
> (2) Imposing Fees and Costs.  Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses --including attorney's fees--incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 16(f); Martin Family Trust v. Heco/Nostalgia Enters. Co., 186 F.R.D. 601, 602 (E.D. Cal. 1999) ("Rule 16(f) gives a federal judge authority to sanction a party or a party's attorney who fails to obey a scheduling order."). FRCP 16(f) "is broadly remedial and its purpose is to encourage forceful judicial management."  Sherman v. United States, 801 F.2d 1133, 1135 (9th Cir. 1986).  The Court has broad discretion to impose sanctions under FRCP 16(f). Official Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1397 (9th Cir. 1993); Martin, 186 F.R.D. at 602-03 (quoting Matter of Sanction of Baker, 744 F.2d 1438, 1440 (10th Cir. 1984) (en banc)) (emphasis added) ("Under Rule 16(f) courts have 'very broad discretion to use sanctions where necessary to insure not only that lawyers and parties refrain from contumacious behavior, already punishable under the various other rules and

statutes, but that they *fulfill their high duty to insure the expeditious and sound management of the preparation of cases for trial.'"*).  Sanctions may be imposed whether or not disobedience is intentional.  <u>Wilson v. KRD Trucking W.</u>, No. 2:10-CV-00163-KJD, 2013 WL 836995, at *1 (D. Nev. Mar. 6, 2013) (citing <u>Lucas Auto. Eng'g, Inc. v. Bridgestone/ Firestone, Inc.</u>, 275 F.3d 762, 769 (9th Cir. 2001)).

Under the circumstances, the Court finds that FRCP 16(f) sanctions would be inappropriate.  Not only is Plaintiff's post-judgment reliance on FRCP 16(f) in response to a fee motion highly unconventional, it does not support the imposition of sanctions here.  Plaintiff argues that Defendant violated paragraph 12 of the Scheduling Order, which established August 5, 2016 as the discovery deadline.  Doc. Nos. 15, 48.  Because the discovery deadline was continued until September 6, 2016, doc. no. 47, production of the Little Documents on August 11, 2016, could not have violated paragraph 12 the Scheduling Order.[4]  The Court therefore declines to impose sanctions pursuant to FRCP 16(f).

---

[4]  Ironically, if Defendant violated the discovery deadline, so too did Plaintiff by taking Little's deposition on August 11, 2016.  Contradictions such as these highlight the baselessness of Plaintiff's arguments.

Although Defendant concedes that the Little Documents should have been produced, Plaintiff could have and should have requested relief for Defendant's failure to timely produce documents during the pendency of the litigation pursuant to FRCP 26 or 37.[5]  In re Yagman, 796 F.2d at 1187 ("Sanctions for discovery abuses [such as failure to produce] are governed primarily by Rule 26(g) and Rule 37.").  If the discovery violations were as egregious as Plaintiff now claims, it surely would have brought them to the Court's attention prior to the issuance of the SJ Order, and it had ample opportunity to do so.  This Court makes itself readily available for discovery conferences, and parties have other tools at their disposal, such as letter briefs and discovery motions, to seek the Court's assistance with obtaining documents and other discovery.  Plaintiff did not utilize these tools, and certainly never moved to compel production of the Little Documents or seek sanctions against Defendant for failure to produce them.  In any event, even if Plaintiff requested discovery sanctions pursuant to the applicable

---

[5]  Plaintiff cites Rodman v. Safeway Inc., No. 11-CV-03003-JST, 2016 WL 5791210, at *5 (N.D. Cal. Oct. 4, 2016), to support the imposition of sanctions, but in that case, sanctions were imposed pursuant to FRCP 26(g), not FRCP 16(f), § 1927, or the court's inherent powers.  Plaintiff is not seeking sanctions pursuant to FRCP 26(g).

rules, the request would be untimely, having been raised after the conclusion the litigation.[6]

B.   Inherent Power

Plaintiff seeks sanctions pursuant to the Court's inherent power for the following instances of alleged misconduct by Defendant:[7]  1) failures related to the Little Documents; 2) misrepresentations in the summary judgment papers that no warranties had been produced in the litigation and no warranties existed; 3) questioning the very existence of the Homeland Security's investigation at the summary judgment hearing when counsel engaged in discussions with Special Agent Paul Malana regarding the subpoena issued to Defendant the day before the hearing; and 4) refusal to defer

---

[6]  Neither would good cause exist under FRCP 16(b) to amend the Scheduling Order to allow for such a belated request.  Any motion brought under FRCP 26 through 37 was required to be heard 30 days before the discovery deadline, which means that it had to be filed by July 1, 2016.  Doc. No. 48, ¶ 12 ("Unless otherwise permitted by the Court, all discovery motions and conferences made or requested pursuant to Federal Rules of Civil Procedure, Rules 26 through 37 inclusive of LR 26.1, 26.2 37.1 shall be heard no later than thirty (30) days prior to the discovery deadline."); Local Rule 7.2(a) ("[A]ll motions shall be entered on the motion calendar of the assigned judge for hearing not less than thirty-five (35) days (five weeks) after service.").

[7]  These allegations of misconduct also serve as the basis for Plaintiff's request for § 1927 sanctions.  In making their arguments, Plaintiff conflates inherent power and § 1927 sanctions.

pending depositions until after the Court's ruling on summary judgment.[8]

The Court's inherent power is broad in that it applies to "a full range of litigation abuses." Fink v. Gomez, 239 F.3d 989, 992 (9th Cir. 2001). However, "the litigant must have 'engaged in bad faith or willful disobedience of a court's order,'" id. (citation omitted), and "the court must make an express finding that the sanctioned party's behavior 'constituted or was tantamount to bad faith'" before awarding sanctions pursuant to its inherent power. Haeger v. Goodyear Tire & Rubber Co., 813 F.3d 1233, 1244 (9th Cir. 2016).

"Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." Fink, 239 F.3d at 994. The Ninth Circuit has held that "an attorney's reckless misstatements of law and fact, when coupled with an improper purpose, such as an

---

[8] This Court already concluded that it was reasonable for Defendant to take depositions after the summary judgment hearing because he could not have reasonably predicted that he would prevail based on Judge Watson's comments at the hearing, and the trial and other deadlines were quickly approaching. F&R, Doc. No. 70 at 12. Accordingly, this cannot serve as a basis for sanctions.

attempt to influence or manipulate proceedings in one case in order to gain tactical advantage in another case, are sanctionable under a court's inherent power." Id. Delaying or disrupting the litigation and "[a]ctions constituting a fraud upon the court or actions that cause 'the very temple of justice [to be] defiled'" are sufficient to support a finding of bad faith. Haeger, 813 F.3d at 1244 (second alteration in original) (citations omitted). "Fraud on the court must involve 'an unconscionable plan or scheme which is designed to improperly influence the court in its decision.'" Abatti v. C.I.R., 859 F.2d 115, 118 (9th Cir. 1988) (citation omitted).

"A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." Chambers v. NASCO, Inc., 501 U.S. 32, 50 (1991) (citation omitted). When other Rules could adequately sanction bad-faith conduct during the course of litigation, "the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." Id.

11

Based on the record before the Court, the requisite finding of bad faith cannot be made.[9]  None of the allegations of misconduct rise to a level of bad faith.  First, with respect to the belated production of the Little Documents, the Court has already determined that, if anything, sanctions should have been requested by way of FRCP 26 or 37 during the pendency of the litigation.  While Defendant should have timely produced the Little Documents, the failure to do so does not amount to bad faith, nor did it change the outcome of the litigation.  Summary Judgment was granted on statute of limitations grounds, so it is unclear how the Little Documents

---

[9]  The cases cited by Plaintiff in support of inherent power sanctions are distinguishable.  Notably, findings of bad faith are made when there is a pattern of misconduct that in some cases continues even after admonishment and warnings by the court; such facts are not presented here.  See, e.g., Haeger, 813 F.3d at 1245-47 (involving years long course of misconduct and finding by the district court that the sanctionees "adopted a plan of making discovery as difficult as possible, providing only those documents they wished to provide, timing the production of the small subset of documents they were willing to turn over such that it was inordinately difficult for Plaintiffs to manage their case, and making false statements to the Court in an attempt to hide their behavior"); Chambers, 501 U.S. at 56-57 (alteration in original) (affirming inherent power sanctions because Chambers received repeated timely warnings both from NASCO and the court that his conduct was sanctionable; awarding full amount of attorneys' fees incurred by NASCO because Chambers' actions were "part of [a] sordid scheme of deliberate misuse of the judicial process" designed "to defeat NASCO's claim by harassment, repeated and endless delay, mountainous expense and waste of financial resources").

would have helped Plaintiff's claims.  Tellingly, Plaintiff did not file a motion for reconsideration of the SJ Order, which it could have done in light of the new evidence, and it did not appeal the SJ Order.  Were the documents as significant as Plaintiff has touted them to be, one would expect Plaintiff to have taken steps to have them considered in connection with the adjudication of this action.

Second, defense counsel's comment at the hearing - characterized by Plaintiff as questioning the existence of the government investigation - does not support the imposition of sanctions, and Plaintiff's reliance on it is misplaced.  At the hearing, defense counsel stated:[10]

> And they point to this investigation but they, for all intents and purposes, appear to have instigated that investigation.  In any event, that investigation, even assuming it's going on, it irrelevant and raises no issue of material fact.  Because the mere fact that the Department of Homeland Security might be looking into it, doesn't raise any questions as to the title as to Mr. Greene.

Opp'n, Ex. R at 10:6-12.  It is unclear how the above passage amounts to "calculated obfuscation" or could conceivably serve as a basis for sanctions.  Defendant did not conceal or refute the existence of the investigation and Plaintiff has

---

[10]  Plaintiff did not include the full context of the colloquy in its Opposition.

13

mischaracterized the nature of counsel's comment.  Indeed,

Judge Watson acknowledged the existence of the ongoing

investigation and his denial of Plaintiff's request for a stay

had nothing to do with uncertainty about the existence of an

investigation.

> The Court disagrees that the ongoing
> investigation justifies deferral of the Court's
> disposition.  As discussed at oral argument, HAA
> received appropriate consideration for the
> Annuity Agreement in 2004, and that conclusion
> is unaffected by whatever the results of DHS'
> 2016 investigation may be.  Because HAA has
> failed to provide a persuasive reason for the
> Court to administratively stay the case, HAA's
> request is DENIED.

SJ Order at 24.  Defense counsel's purported misconduct at the

SJ hearing simply does not constitute the type of "bad faith"

that the Court's inherent power is intended to curtail and

punish.

Last, conducting discovery after the SJ hearing in

order to comply with deadlines and to prepare for trial is not

sanctionable conduct.  Defendant could not have reasonably

predicted success based on Judge Watson's comments and

questions at the hearing.

For the reasons articulated above, the Court

declines to impose sanctions pursuant to its inherent power.

14

C.    § 1927

Finally, Plaintiff requests that sanctions be imposed pursuant to § 1927 for the conduct identified above.[11] An attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927; In re Yagman, 796 F.2d at 1187 ("[D]amages under section 1927 are appropriate where there is no obvious violation of the technical rules, but where, within the rules,

---

[11]  The cases cited by Plaintiff in support of § 1927 are distinguishable.  See, e.g., Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc., 210 F.3d 1112, 1118 (9th Cir. 2000) (finding "bad faith based on: 1) counsels' failure to inform a Florida state court of the pending, previously filed federal action; 2) [counsel] advising his client that it could continue to fly the plane after entry of the TRO; and 3) [counsel's] bad faith arguments made during the second contempt hearing . . . [and] that these misrepresentations and bad faith arguments violated the rules of conduct and interfered with [the court's] ability to maintain effective control over court processes"); Moser v. Bret Harte Union High Sch. Dist., 366 F. Supp. 2d 944, 988 (E.D. Cal. 2005) (imposing sanctions pursuant to FRCP 11, § 1927 and the court's inherent power against the defendant and its counsel for engaging "in bad faith litigation tactics through their systematic and repeated misstatements of the record, frivolous objections to Plaintiff's statement of facts, and repeated mischaracterizations of the law");

the proceeding is conducted in bad faith for the purpose of delay or increasing costs."); Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc., 210 F.3d 1112, 1117 (9th Cir. 2000) (citation omitted) ("Section 1927 authorizes the imposition of sanctions against any lawyer who wrongfully proliferates litigation proceedings once a case has commenced."). Like sanctions imposed pursuant to a court's inherent power, "[t]he imposition of sanctions under § 1927 requires a finding of bad faith." Pac. Harbor, 210 F.3d at 1118. A subjective standard is employed in assessing bad faith and knowing or reckless conduct meets the standard. Id.

As already discussed in the preceding section, Defendant did not act in bad faith and neither did his attorneys, much less for the purpose of delaying or increasing costs. Plaintiff on one hand expresses outrage at the requested fee amount given the limited motions practice and discovery, yet it accuses Defendant of multiplying proceedings and causing protracted litigation. It is a gross exaggeration and in fact a mischaracterization to argue that the adjudication of one motion - Defendant's MSJ - with disposition of the case occurring in less than one year, amounted to protracted litigation.

16

Plaintiff surmises that the parties could have reached an expeditious resolution of this action had Defendant timely disclosed the Little Documents.  Not only is this speculative, but unlikely given Plaintiff's initiation and continued pursuit of this litigation notwithstanding obvious statute of limitations issues.  Arguably, if defense counsel multiplied proceedings, so too did Plaintiff's counsel by pursuing claims that were ultimately found to be clearly barred by (and in fact years past the expiration of) the applicable statute of limitations.

The Court has already determined that conducting discovery after the SJ hearing was proper, and again reiterates that such discovery did not unjustifiably multiple the proceedings.  Because the Court finds that defense counsel did not unreasonably or vexatiously multiply the proceedings in this case, § 1927 sanctions are unwarranted.

Having concluded that Plaintiff is not entitled to sanctions that would offset the recovery of fees, the Court now turns to the reasonableness of Defendant's fee request.

II.   <u>Reasonableness of the Fee Request</u>

Defendant requests $168,045.00 in attorneys' fees, as set forth in the following table:

| NAME | HOURS | RATE | TOTAL |
|------|-------|------|-------|
| Jerold Matayoshi | 177.4 | $350.00 | $62,090.00 |
| Gurudev Allin | 329.4[12] | $225.00 | $74,115.00 |
| Simon Frankel | 6.2 | $350.00 | $2,170.00 |
| Debbie Chinna | 296.7 | $100.00 | $29,670.00 |
| **TOTAL** | | | **$168,045.00** |

A federal court sitting in diversity must apply state law in determining whether the prevailing party is entitled to attorneys' fees.  See Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr., 250 F.3d 1234, 1236 (9th Cir. 2001).  Not only is the right to fees governed by state law "but also [] the method of calculating the fees."  Mangold v. Cal. Pub. Utilities Comm'n, 67 F.3d 1470, 1478 (9th Cir. 1995).

Hawaii courts calculate reasonable attorneys' fees based on a method that is virtually identical to the traditional "lodestar" calculation set forth in Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  See DFS Group L.P. v. Paiea Props., 110 Hawai'i 217, 222, 131 P.3d 500, 505 (2006). The court must determine a reasonable fee by multiplying the

---

[12]  Defendant initially requested 343.4 hours, but reduced the hours by 14 to eliminate duplicate entries for Mr. Allin's attendance at depositions and the SJ hearing because Mr. Matayoshi was also present.

number of hours reasonably expended by a reasonable hourly

rate.  Id. at 222-23, 131 P.3d at 505-06.  In addition, Hawaii

courts may consider the following factors:

> (1) the time and labor required, the novelty and
> difficulty of the questions involved and the
> skill requisite properly to conduct the cause;
> (2) whether the acceptance of employment in the
> particular case will preclude the lawyer's
> appearance for others in cases likely to arise
> out of the transaction, and in which there is a
> reasonable expectation that otherwise he would
> be employed, or will involve the loss of other
> employment while employed in the particular case
> or antagonisms with other clients; (3) the
> customary charges of the Bar for similar
> services; (4) the amount involved in the
> controversy and the benefits resulting to the
> client from the services; (5) the contingency or
> the certainty of the compensation; and (6) the
> character of the employment, whether casual or
> for an established and constant client.

Chun v. Bd. of Trs. of Employees' Ret. Sys. of Hawai'i, 106

Hawai'i 416, 435, 106 P.3d 339, 358 (2005) (citations

omitted).  These factors, however, are merely guides; courts

need not consider them in every case.  See id.  In certain

types of cases, some of these factors may justify applying a

multiplier to the "lodestar" amount.  See Chun v. Bd. of Trs.

of Employees' Ret. Sys. of Hawai'i, 92 Hawai'i 432, 442, 992

P.2d 127, 137 (2000).

A.    Reasonable Hourly Rate

Defendant requests the following hourly rates

for his counsel:  1) Jerold Matayoshi - $350; 2) Simon

Frankel[13] - $350; 3) Gurudev Allin - $225; and 4) Debbie Chinna

(paralegal) - $100.  Plaintiff challenges the requested rates

as unreasonable and excessive, and asserts that the rates

should be reduced to $285 for Mr. Matayoshi, $185 for Mr.

Allin, and $85 for Ms. Chinna.[14]  Plaintiff did not address Mr.

---

[13]  Mr. Frankel is a partner at Covington & Burling, LLP, based in the firm's San Francisco office.  Mot., Decl. of Simon J. Frankel ("Frankel Decl.") at ¶ 1.  Defendant retained him prior to the commencement of this action.  Id.  Mr. Frankel charged Defendant an hourly rate of $770, which he represents is within the range of reasonableness for attorneys with similar experience and qualifications in San Francisco.  Id. at ¶ 5.  However, Defendant has reduced the requested hourly rate to reflect the prevailing rates for attorneys with similar experience in Honolulu.  Mr. Frankel did not seek, nor obtain, permission to appear pro hac vice.

[14]  Interestingly, the arguments advanced by Plaintiff's counsel here are in stark contrast to the position presented by their firm in Martin v. City and County of Honolulu, where it argued that its attorneys' standard market rates should be adopted as "the prevailing rates in the community 'for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  Civil No. 15-00363 HG-KSC, Doc. No. 115-1 at 23.  The hourly rates requested in that case ranged from $125 (and as high as $160) for paralegals to $785 for attorneys.  Id. at 27-28; Doc. No. 115-4.  A $210 hourly rate was requested for an attorney with 6 years of experience and hourly rates ranging from $325 to $395 were requested for attorneys with 12 to 20 years of experience.  Doc. No. 115-1 at 27-28; Doc. Nos. 115-2, 115-4.

Plaintiff relied on older decisions in this district to oppose the requested hourly rates, and ignored recent decisions awarding higher rates that involved its counsel's firm.

Frankel's hourly rate because it believes that his fees are not recoverable due to his failure to obtain pro hac vice admission.

The Hawaii courts consider the reasonable hourly rate in a manner virtually identical to the traditional lodestar formulation and some courts have considered federal law in determining a reasonable hourly rate. See, e.g., Reiche v. Ferrera, No. 24449, 2003 WL 139608, at *8 (Haw. Ct. App. Jan. 16, 2003) ("The reasonable hourly rate is that prevailing in the community for similar work." (citing United States v. Metro. Dist. Comm'n, 847 F.2d 12, 19 (1st Cir. 1988)). The Court therefore finds that federal case law on the determination of a reasonable hourly rate is instructive in this case.

In determining the reasonableness of an hourly rate, the experience, skill, and reputation of the attorney requesting fees are taken into account. See Webb v. Ada County, 285 F.3d 829, 840 & n.6 (9th Cir. 2002). The reasonable hourly rate should reflect the prevailing market rates in the community. See id.; Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992), as amended on denial of reh'g, (1993) (noting that the rate awarded should reflect "the rates of attorneys practicing in the forum district").

21

It is the burden of the fee applicant to produce satisfactory evidence, in addition to an affidavit from the fee applicant, demonstrating that the requested hourly rate reflects prevailing community rates for similar services.  See Jordan v. Multnomah County, 815 F.2d 1258, 1263 (9th Cir. 1987).

This Court is well aware of the prevailing rates in the community for similar services performed by attorneys of comparable experience, skill and reputation.  Based on this Court's knowledge of the community's prevailing rates, the hourly rates generally granted by the Court, the Court's familiarity with this case, and counsel's submissions, this Court finds the following rates to be manifestly reasonable: 1) Mr. Matayoshi - $350; 2) Mr. Frankel - $325; 3) Mr. Allin - $190; and 4) Ms. Chinna (paralegal) - $90.

Mr. Matayoshi has over 35 years of legal experience. A $350 hourly rate is well within the range of reasonableness for attorneys with his experience, skill, and reputation. Booth v. Wong, No. CIV. 10-00680 DKW-RLP, 2015 WL 4663994, at *3 (D. Haw. July 17, 2015), adopted by 2015 WL 4676343 (D. Haw. Aug. 5, 2015) (finding reasonable a $500 hourly rate for Paul Alston, who has more than 40 years of experience, and a $300 hourly rate for an attorney with 20 years of experience); Pelayo v. Platinum Limousine Servs., Inc., No. CV 15-00023

DKW-KJM, 2016 WL 5402185, at *5 (D. Haw. Sept. 27, 2016)

(finding reasonable an hourly rate of $310 for an attorney

with 27 years of experience); Sunday's Child, LLC v. Irongate

Azrep BW LLC, No. CIV. 13-00502 DKW-RLP, 2014 WL 2451560, at

*3 (D. Haw. May 30, 2014) (finding that $500.00 is a

reasonable hourly rate for an attorney with more than 40 years

of experience); Au v. Funding Grp., Inc., 933 F. Supp. 2d

1264, 1274-75 (D. Haw. 2013) (finding $395 to be a reasonable

hourly rate for Mr. Alston).

Mr. Frankel has 25 years of experience and is a

partner at a firm in San Francisco. Mr. Frankel billed

Defendant and was paid at a $770 hourly rate, but Defendant

has reduced the requested rate to $350 so that it is

commensurate with prevailing rates in this community for

attorneys with similar experience. In view of Mr. Frankel's

role in this case, the nature of this case, and the range of

hourly rates awarded to comparable attorneys in this district,

the Court imposes a slight reduction and finds that Mr.

Frankel is entitled to an hourly rate of $325. See, e.g.,

Booth, 2015 WL 4663994, at *3.

Mr. Allin, an attorney with approximately 7 years of

experience, requests a $225 hourly rate, but the Court finds

that a slight reduction to $190 is appropriate and within the

range of reasonable rates for an attorney with Mr. Allin's skill, reputation, and experience.[15] <u>Pelayo</u>, 2016 WL 5402185, at *5 (making an upward adjustment from $200 to $225 to the hourly rate for an attorney with 11 years of experience even though $200 was well within the range of reasonableness for the attorney's experience in order "to place counsel at the higher end of reasonable rates in this community, given the nature of this case, to ensure the availability of representation in cases where damages are low or non-existent, and to avoid stagnation of rates over time"); <u>Au</u>, 933 F. Supp. 2d at 1275 (finding $165 to be a reasonable hourly rate for an attorney with 7 years of experience); <u>Sunday's Child</u>, 2014 WL 2451560, at *2 (finding $275 and $230 to be reasonable hourly rates for attorneys with more than 8 years and 6 years of experience, respectively, given the "experience, reputation, and ability of [the] attorneys, the result obtained, and the efficiency they employed in resolving the matter for their client (less than 100 hours expended total among all timekeepers)"); <u>Roberts v. City & Cty. of Honolulu</u>, No. 15-00467 ACK-RLP, 2016 WL 3136856, at *4, *7 (D. Haw. June 3,

---

[15] There is an especially wide range of hourly rates awarded to attorneys with 7 years of experience depending on the type of case and the respective judge's evaluation of reasonableness based on a number of factors.

2016) (finding an hourly rate of $150.00 to be reasonable for an attorney with 7 years of experience); Hawaii Defense Found. v. City & Cty. of Honolulu, No. CIV. 12-00469 JMS-RLP, 2014 WL 2804448, at *5 (D. Haw. June 19, 2014) (concluding that $185 was at the higher end of reasonable rates for an attorney with 7.5 years); De-Occupy Honolulu v. City & Cty. of Honolulu, No. CIV. 12-00668 JMS-KSC, 2015 WL 1013834, at *10 (D. Haw. Mar. 9, 2015) ($185 hourly rate for attorney with approximately 8 years of experience).

Finally, Defendant requests a $100 hourly rate for Ms. Chinna, who has approximately 18 years of experience as a litigation paralegal.  To be consistent with the hourly rates recently awarded in this district for paralegals, and based on her experience, the Court finds that a $90 hourly rate is manifestly reasonable.  Booth, 2015 WL 4663994, at *2, *4 (reducing paralegal hourly rates from $145 to $100 and $125 to $95 for paralegals with over 24 and 20 years of experience, respectively); Civil Beat Law Ctr. for the Pub. Interest, Inc. v. Centers for Disease Control & Prevention, No. CV 16-00008 JMS-KSC, 2017 WL 664446, at *10 (D. Haw. Jan. 31, 2017), adopted by 2017 WL 663232 (D. Haw. Feb. 16, 2017) (concluding that a $100 hourly rate for paralegal work completed by an attorney with over 15 years experience is manifestly

reasonable); <u>Au</u>, 933 F. Supp. 2d at 1275 (finding $85 to be a reasonable hourly rate for a paralegal).

    B.   <u>Reasonableness of Hours Expended</u>

        For the reasoning stated above, this Court finds federal case instructive on the issue of the reasonable number hours expended on the instant case.  Beyond establishing a reasonable hourly rate, a prevailing party seeking attorneys' fees bears the burden of proving that the fees and costs taxed are associated with the relief requested and are reasonably necessary to achieve the results obtained.  <u>Tirona v. State Farm Mut. Auto. Ins. Co.</u>, 821 F. Supp. 632, 636 (D. Haw. 1993) (citations omitted).  The court must guard against awarding fees and costs which are excessive, and must determine which fees and costs were self-imposed and avoidable.  <u>Id.</u> at 637 (citing <u>INVST Fin. Group v. Chem-Nuclear Sys.</u>, 815 F.2d 391, 404 (6th Cir. 1987), <u>cert. denied</u>, 484 U.S. 927 (1987)). Courts have the "discretion to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the case." <u>Soler v. G & U, Inc.</u>, 801 F. Supp. 1056, 1060 (S.D.N.Y. 1992) (citation omitted).  Time expended on work deemed "excessive, redundant, or otherwise unnecessary" shall not be compensated.  <u>See</u> <u>Gates</u>, 987 F.2d at 1399 (quoting <u>Hensley</u>, 461 U.S. at 433-34).

26

Plaintiff submits that reductions should be made with respect to the following time entries:  1) Mr. Frankel's hours because he was never admitted pro hac vice; 2) work unrelated to the litigation, such as media outreach and the Homeland Security investigation; 3) duplication resulting from multiple counsel attending the same proceedings; 4) clerical work; and 5) excessive work.

1.  <u>Defendant May Recover Fees for Mr. Frankel</u>

Plaintiff contends that Mr. Frankel's time should be excluded because he was never admitted pro hac vice.  The Ninth Circuit authorizes a prevailing party to recover attorneys' fees for an attorney who is not admitted to practice in the forum district and who did not seek or obtain admission pro hac vice, as long as the attorney did not appear in the action.  <u>Winterrowd v. Am. Gen. Annuity Ins. Co.</u>, 556 F.3d 815, 823 (9th Cir. 2009); <u>Waite v. Clark Cty. Collection Serv., LLC</u>, 606 Fed. Appx. 864, 866 (9th Cir. 2015).  If an out-of-state attorney "appears in court, signs pleadings, or is the exclusive contact in a case with the client or opposing counsel," however, he must apply for pro hac vice admission.  <u>Winterrowd</u>, 556 F.3d at 825.  Fees may not be recovered for an attorney "if there is evidence he did not meet the legal qualifications to be admitted pro hac vice to the bar of the

27

relevant court had he applied," such as "disbarred, suspended or otherwise unqualified attorneys."  Id.

Here, because Mr. Frankel never appeared in this action, he was not required to obtain pro hac vice admission in order for Defendant to recover his fees.  In fact, nearly all of his involvement preceded the commencement of this action on July 31, 2015.[16]  Defendant explains that Mr. Frankel provided pre-suit services in an attempt to resolve the underlying dispute.

Moreover, Plaintiff has not suggested, nor offered evidence, that Mr. Frankel would not satisfy the legal qualifications to be admitted pro hac vice in this court had he applied.  As a matter of fact, this Court authorized Mr. Frankel to appear pro hac vice in 2009.  See Tivoli Assocs., Inc. v. Corbis Corp., et al., Civil No. 09-00333 ACK-KSC, Doc. No. 9.

Plaintiff's reliance on Shapiro v. Paradise Valley Unified Sch. Dist. No. 69, 374 F.3d 857 (9th Cir. 2004) and Idaho Sporting Cong., Inc. v. Alexander, 23 Fed. Appx. 713 (9th Cir. 2001) is misplaced.  In Shapiro, the attorney who

---

[16]  Mr. Frankel's invoices contain entries reflecting 6.2 hours of time expended from July 3, 2015 to August 13, 2015. Mot., Frankel Decl., Ex. 3.  Defendant removed this case on September 8, 2015.

represented the plaintiffs in IDEA proceedings at the administrative level and before the district court did not obtain pro hac vice admission until late in the proceedings. Id. at 860.  The district court concluded that the time spent by counsel prior to his admission pro hac vice was not compensable.  Id.  The Ninth Circuit affirmed, holding that "[t]he Arizona Supreme Court's rules regulating the practice of law, including admission *pro hac vice*, are mandatory and must be followed."  Id. at 862.  Counsel's <u>appearance</u> in that action mandated that he secure pro hac vice admission, and his failure to do so at the outset of the case justifiably resulted in a reduction of the recoverable fees.

In <u>Idaho Sporting Congress</u>, the district court denied plaintiffs' request for fees on the grounds that "out-of-state counsel was an inactive member of the Colorado bar during certain periods of the litigation and was not admitted *pro hac vice* during this litigation in federal district court in Idaho."  23 Fed. Appx. at 714.  The Ninth Circuit affirmed the district court's determination that failure to timely and properly secure pro hac vice admission was a sufficient basis to deny the plaintiff's application for attorneys' fees.  Id.  It reasoned that

> [t]he district court cited several significant
> and legitimate reasons for denying ISC counsel's
> nunc pro tunc motion for pro hac vice
> status—namely, his tardiness in filing the
> application, his failure to file a proper
> application, his unsupported and unsworn
> statements regarding his bar status, his
> misleading statements regarding his standing
> with the Colorado Bar, his failure to notify the
> district court of his inactive status, and his
> failure to take the Idaho bar despite his
> long-term residence in the state.

Id.  Plaintiff cites this case for the proposition that

failure to secure pro hac vice admission before the district

court justified the denial of fees.  However, it was not

merely counsel's failure to secure pro hac vice admission at

issue; it was the fact that the district court denied his nunc

pro tunc motion for pro hac vice status due to the many

failures identified above.  This is in accord with Ninth

Circuit precedent prohibiting the recovery of fees when

counsel cannot meet the legal qualifications to be admitted

pro hac vice in the relevant court.  Winterrowd, 556 F.3d at

825.  As already noted, Mr. Frankel's inability to obtain pro

hac vice status is not at issue here.  The Court therefore

finds that his fees may be recovered as long as they were

reasonably incurred.

     2.   Media Outreach and Homeland Security
           Investigation

     Plaintiff argues that all time entries associated

with media outreach and responding to Homeland Security's
investigation should be excluded.[17]  Plaintiff's contention
that the media outreach and investigation are unrelated to the
litigation is not well taken.  The media outreach would not
have occurred but for Plaintiff's commencement of this time-
barred action.  Therefore, the Court will not preclude
recovery of fees for time expended on media outreach unless an
independent basis exists to exclude the associated hours.

As for the Homeland Security investigation, although
it is separate from this litigation, it was reasonable for
Defendant to expend time on matters relating to the
investigation, including certain matters related to the
subpoena issued to Defendant, to ascertain the potential
impact on this case.  Notably, Plaintiff made the
investigation a part of this action by seeking to stay the
case due to the pendency of the same.  The Court accordingly
finds that time entries relating to the investigation itself,
as well as the research and other inquiries made with respect
to the subpoena, are compensable.

---

[17]  Plaintiff claims that it is not seeking to exclude all
work relating to the investigation, but it has identified all
entries having anything to do with the investigation as
subject to exclusion.  Opp'n, Exs. A & C.

The Court has reviewed the relevant entries and finds that the following hours expended in connection with the Homeland Security investigation were not sufficiently related to this litigation and should be excluded from Defendant's fee award as a result:  1) Mr. Matayoshi - 0.7; 2) Mr. Allin - 2.3; and 3) Ms. Chinna - 2.1.

3.   <u>Reductions to the Time Expended</u>

After careful review of Defendant's submissions, the Court finds that reductions for 1) clerical work; 2) duplication; 3) insufficient descriptions; 4) excessiveness; 5) block billing; and 6) unrelated tasks are necessary and appropriate.[18]

a.   <u>Clerical Work</u>

Counsel billed for tasks that have been identified as clerical in this district.  "[C]lerical or ministerial

---

[18]  Plaintiff did not identify all of these bases for reductions, but the Court "has an independent duty to review the submitted itemized log of hours to determine the reasonableness of hours requested in each case."  <u>Irwin v. Astrue</u>, No. 3:10-CV-545-HZ, 2012 WL 707090, at *1 (D. Or. Mar. 5, 2012) (citation omitted).  "Thus, even when the opposing party does not object to a motion for attorneys' fees, the court must independently review the petition for reasonableness and give a 'concise but clear explanation of its reasons for the fee award.'"  <u>De-Occupy</u>, 2015 WL 1013834, at *12 (citations omitted).  In certain instances, multiple bases exist for excluding a given time entry.  When that is the case, the Court has excluded the time under a single category.

costs are part of an attorney's overhead and are reflected in the charged hourly rate." <u>HRPT Props. Trust v. Lingle</u>, 775 F. Supp. 2d 1225, 1241 (D. Haw. 2011) (alteration in original) (citations and quotations omitted).  The following is a list of tasks previously deemed clerical or ministerial in this district and are therefore non-compensable:

> reviewing Court-generated notices; scheduling dates and deadlines; calendering dates and deadlines; notifying a client of dates and deadlines; preparing documents for filing with the Court; filing documents with the Court; informing a client that a document has been filed; personally delivering documents; bates stamping and other labeling of documents; maintaining and pulling files; copying, printing, and scanning documents; receiving, downloading, and emailing documents; and communicating with Court staff.[19]

<u>Haw. Motorsports Inv., Inc. v. Clayton Grp. Servs., Inc.</u>, Civ. No. 09-00304 SOM-BMK, 2010 WL 4974867, at *5 (D. Haw. Dec. 1, 2010), <u>adopted by</u> 2010 WL 5395669 (D. Haw. Dec. 22, 2010) (also deeming clerical identification and organization of exhibits);[20] <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Yamada v. Weaver</u>, Civil No.

---

[19]   This list is a sampling and is not exhaustive.

[20]   Although selecting exhibits to be used in a case is a legal task, simple review and/or organization is clerical. <u>I.T. v. Dep't of Educ., Haw.</u>, 18 F. Supp. 3d 1047, 1054 (D. Haw. 2014).  Because Ms. Chinna's entries distinguish between "selection" and "preparation" of exhibits and other documents, the time she expended on simple review or organization will be excluded.

10-00497 JMS-RLP, 2012 WL 6019363, at *10 (D. Haw. Aug. 30, 2012), adopted in pertinent part by 2012 WL 6019121 (D. Haw. Nov. 30, 2012) (deeming clerical work completed on table of authorities).

Counsel billed for a number of clerical tasks such as preparing/filing/sending documents, scheduling, and preparing exhibits.[21]  Even if Ms. Chinna completed the tasks, they are non-compensable.  This is because a clerical task is non-compensable, whether billed at an attorney or paralegal rate.  Missouri v. Jenkins by Agyei, 491 U.S. 274, 288 n.10 (1989) ("Of course, purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them.").

Certain of the clerical tasks were block billed[22] with a compensable task.  That is, counsel included multiple

---

[21]  The following are examples of clerical tasks: 1) Mr. Matayoshi's 7/22/16 entry ("Review notice of discovery status conference with Judge Chang"); 2) Mr. Matayoshi's 9/28/15 entry ("Letter from First Circuit Court to USDC transmitting certified copies of entire state court record"); 3) Mr. Allin's 2/2/16 entry ("Call from USDC re. rescheduling status conference currently set for February 8"); 4) Ms. Chinna's 7/1/16 entry ("Prepare attachments to settlement demand letter"); 5) Ms. Chinna's 5/3/16 entry ("Prepare Green Declaration and Green 0004 for Federal Court filing").  Mot., Ex. 5.

[22]  The Court will discuss block billing in the next section.

34

tasks within a single time entry.[23]  Therefore, even though the entire time entry may not have involved clerical tasks, the Court will recommend exclusion of the entire entry because the use of block billing precludes the Court from reasonably apportioning the time between the clerical task and the compensable task.  I.T., 18 F. Supp. 3d at 1054 ("[I]n light of the fact that this Court cannot determine how much of the 2.3 hours attributed to the entry as a whole was spent on the legal services [versus clerical work], this Court agrees with the magistrate judge that the entire entry should be excluded as improper block billing.").  Based on its careful review of the timesheets, the Court recommends that the district court deduct the following time expended on clerical tasks:  1) Mr. Matayoshi - 6.2 hours; 2) Mr. Allin - 10.5 hours; and 3) Ms. Chinna - 30.6 hours.

> b.  <u>Duplication</u>

The Court reduces hours for meetings, discussions, and other communications, for which multiple attorneys have

---

[23]  For example, Mr. Allin's 8/8/16 entry ("Prepare for deposition of Pauline Sugino, assemble exhibits, outline questions") would be compensable as to the deposition preparation, but the inclusion of a clerical task (assembling exhibits) within the same time entry precludes recovery of the entire time entry because the Court has no way to accurately apportion the time between tasks.

billed.   The general rule is that two professionals cannot bill for attending the same meeting.   <u>HRPT Props.</u>, 775 F. Supp. 2d at 1240 (citing <u>Brandon E. v. Dep't of Educ., State of Hawaii</u>, No. CV 07-00536 ACK-LEK, 2008 WL 4602533, at *3 (D. Haw. Oct. 16, 2008)).   The Court does not allow more than one attorney to bill for attending (1) a meeting between co-counsel, (2) a client meeting, or (3) a meeting with opposing counsel.   <u>Ko Olina Dev., LLC v. Centex Homes</u>, Civ. No. 09-00272 DAE-LEK, 2011 WL 1235548, at *12 (D. Haw. Mar. 29, 2011).   "In such a situation, the Court typically deducts the time spent by the lowest-billing attorney or attorneys." <u>Sheehan v. Centex Homes</u>, 853 F. Supp. 2d 1031, 1044 (D. Haw. 2011) (citation omitted); <u>In re Mullins</u>, 84 F.3d 459, 467 (D.C. Cir. 1996) (deducting fees incurred by the two lowest-billing attorneys where three attorneys billed time spent attending a meeting together)).   The Court permits "two attorneys to bill for their appearances at court proceedings when it is reasonable and necessary for a 'second chair' to appear with lead counsel." <u>Sheehan</u>, 853 F. Supp. 2d at 1044.

Plaintiff argues that reductions must be made for duplicative time entries, i.e. multiple timekeepers attending

the same conference, deposition, or hearing.[24]   Defendant

withdrew 14 hours of Mr. Allin's time, which represents 12.8

hours for attending depositions and 1.2 hours for attending

the SJ hearing, because Mr. Matayoshi was also present and

billed for that time.   While the Court appreciates Defendant's

withdrawal of these duplicative hours, additional reductions

must be made to both Ms. Chinna and Mr. Allin's hours for

attendance at meetings and conferences that were also attended

by Mr. Matayoshi.   Moreover, Defendant has not argued, nor

does the Court find, that Mr. Allin's attendance was necessary

at court proceedings such as settlement conferences and the

final pretrial conference where Mr. Matayoshi was present.

      In total, the Court recommends that Mr. Frankel, Mr.

Allin, and Ms. Chinna's hours be reduced by 1.8, 12 and 1.4,

---

[24]   Although the Court agrees that duplicative entries must be excluded, Plaintiff has identified entries as duplicative when they are not, and failed to identify entries that are duplicative.   For example, Plaintiff takes issue with Mr. Allin's 8/29/16 entry ("Confer with JTM and DAC re. case strategy").   Opp'n, Ex. A at 30 (comments – "Duplicative: non compensable meeting with multiple timekeepers").   This entry is not duplicative because neither Mr. Matayoshi nor Ms. Chinna billed for this meeting.   The same error is made with respect to Mr. Allin's 7/20/16 entry ("Confer with JTM re. deposition strategy"), id. at 27, Mr. Matayoshi's 7/8/16 entry ("Confer w/GDA re: oral argument"), id. at 40 (deeming this duplicative and noting that it is non compensable for Mr. Allin when he had no such corresponding entry), and others.

respectively, for duplication.

c.   Insufficient Descriptions

Although counsel's time entries are in large part sufficiently descriptive, a handful of entries must be excluded due to the inadequacy of the descriptions.  Local Rule 54.3(d)(2) requires that the "party seeking an award of fees must describe adequately the services rendered, so that the reasonableness of the requested fees can be evaluated." Local Rule 54.3(d)(2).  The rule further provides:

> [C]ounsel should be sensitive to matters giving rise to attorney-client privilege and attorney work product doctrine, but must nevertheless furnish an adequate non-privileged description of the services in question.  If the time descriptions are incomplete, or if such descriptions fail to describe adequately the services rendered, the court may reduce the award accordingly.  For example, the time entries for telephone conferences must include an identification of all participants and the reason for the call.

Local Rule 54.3(d)(2).  Here, multiple entries fail to include the information required by Local Rule 54.3(d)(2).  One of Mr. Allin's 9/14/15 entries, for example, indicates that he had a telephone conference with Defendant, but it fails to identify the purpose of the call.[25]  Entries that are not sufficiently

---

[25]   This entry would also be excludable as duplicative because Mr. Matayoshi billed for the same call.

descriptive preclude an assessment of reasonableness.  Thus, the Court recommends the following reductions for insufficient descriptions:  1) Mr. Matayoshi - 1 hour; 2) Mr. Frankel - 0.6 hours; 3) Mr. Allin - 1.6 hours; and 4) Ms. Chinna- 0.5 hours.

    d.   Excessiveness

    Plaintiff asks the Court to apply a 50% reduction to excessive time.  In particular, Plaintiff takes issue with the time expended on document production, summary judgment preparation, and deposition preparation.  Time expended on work deemed "excessive, redundant, or otherwise unnecessary" shall not be compensated.  Gates, 987 F.2d at 1399 (quoting Hensley, 461 U.S. at 433-34).  District court findings about matters such as the redundancy of the hours claimed are given considerable deference.  Davis v. City & County of San Francisco, 976 F.2d 1536, 1544 (9th Cir. 1992), vacated in part on other grounds, 984 F.2d 345 (9th Cir. 1993) (quoting Hensley, 461 U.S. at 437).

    The Court declines to arbitrarily apply a 50% reduction to excessive entries.  However, the Court agrees that reductions must be made for excessiveness - particularly in regards to time expended on summary judgment preparation and briefing, discovery matters, and deposition preparation - and it has conducted a careful evaluation of the time sheets

39

to more precisely identify the time that should be excluded.
Based on its review, the Court recommends that the following
reductions be imposed for excessiveness:  1) Mr. Matayoshi -
6.6 hours; 2) Mr. Allin - 47.2; and 3) Ms. Chinna - 17.5.

e.   Block Billing

Counsel also utilized block billing.[26]  "The term
'block billing' refers to the time-keeping method by which
each lawyer and legal assistant enters the total daily time
spent working on a case, rather than itemizing the time
expended on specific tasks."  Robinson v. City of Edmond, 160
F.3d 1275, 1284 n.9 (10th Cir. 1998) (citations and quotation
marks omitted).  Block billed entries generally fail to
specify a breakdown of the time spent on each task.

District courts have the authority to reduce hours
that are billed in block format because such a billing style
makes it difficult for courts to ascertain how much time
counsel expended on specified tasks.  Welch v. Metro. Life
Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007).  See also id.
(citing Role Models Am., Inc. v. Brownlee, 353 F.3d 962, 971
(D.C. Cir. 2004) (reducing requested hours because counsel's

---

[26]  As noted above, if a time entry was blocked billed and
another basis existed for its exclusion, it was deducted in
its entirety.

practice of block billing "lump[ed] together multiple tasks, making it impossible to evaluate their reasonableness")); see also Hensley, 461 U.S. at 437 (holding that applicant should "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims")).  Indeed, it is challenging to assess the reasonableness of a time entry when it includes several tasks.

        Counsel's use of block billing makes it difficult, if not impossible, for the Court to assess the reasonableness of the hours expended as to those entries.  Hence, the Court finds it appropriate to impose an across-the-board reduction of 20% as to the entries that are in the "block billing" format.  Gonzales, 729 F.3d at 1203 (citing Welch, 480 F.3d at 948 (affirming 20% cut to hours where fee applicant block billed, because court relied on third-party report that block billing increased number of hours by 10-30%)); Signature Homes of Haw., LLC v. Cascade Sur. and Bonding, Inc., No. CV 06-00663 JMS-BMK, 2007 WL 2258725, at *3 (D. Haw. Aug. 3, 2007) (reducing block billed hours by 20%).  The Court emphasizes that its proposed reduction applies only the block billed entries; the 20% reduction does not apply to all hours.

Counsel billed 81 hours in the block format.[27] Applying the 20% reduction, the Court recommends that the following reductions be made for block billing:  1) Mr. Matayoshi - 1.58 hours; 2) Mr. Frankel - 0.48 hours; 3) Mr. Allin - 1.4 hours; and 4) Ms. Chinna - 7 hours.

### f.   Unrelated Tasks

Finally, the Court recommends a reduction of 0.6 hours for Ms. Chinna's 4/28/16 entry ("Examine IRS 990 for 2002-2013 and note years with gaming revenue"), Mot., Ex. 5 at 10, which appears to be unrelated to this action.

### 4.   Total Fee Award

In sum, after applying the foregoing reductions, the Court finds that defense counsel reasonably expended 657.3 hours litigating this action.  The resulting lodestar is reflected below:

---

[27]   Examples of block billed entries include: 1) Ms. Chinna's 7/25/16 entry ("Research HAA membership in AAMD and accreditation by AAM in response to expert McCullogh opinions and prepare AAMD submissions of unprovenanced art for use in Eichman deposition"); 3/28/16 entry ("Review and summarize HAA 197-276, supplement Role Chart with Ahlers, Ng Thoeni, Sael, Ng and research their backgrounds"); 2) Mr. Frankel's 8/10/15 entry ("Telephone conferences with D. Mulliken and J. Greene; email re document issues and complaint; telephone conferences re Hawaii counsel"); 3) Mr. Matayoshi's 9/14/15 entry ("Review all background materials, work on Greene's answer to HAA's complaint, counter-claim").

| NAME | HOURS | RATE | TOTAL |
|------|-------|------|-------|
| Jerold Matayoshi | 161.32 | $350.00 | $56,462.00 |
| Gurudev Allin | 255.66 | $190.00 | $48,575.40 |
| Simon Frankel | 3.32 | $325.00 | $1,079.00 |
| Debbie Chinna | 237 | $90.00 | $21,330.00 |
| TOTAL | | | $127,446.40 |

a.   Hawaii Revised Statutes § 607-14's 25% Cap

Hawaii Revised Statutes ("HRS") § 607-14 imposes a cap of 25% of the judgment on fee awards.  Haw. Rev. Stat. § 607-14 (" In all the courts, in all actions in the nature of assumpsit . . . there shall be taxed as attorneys' fees, to be paid by the losing party . . . a fee that the court determines to be reasonable . . . provided that this amount shall not exceed twenty-five per cent of the judgment.").  When a defendant prevails, the cap applies to the amount sued for. Id.  ("The above fees provided for by this section shall be assessed on the amount of the judgment exclusive of costs and all attorneys' fees obtained by the plaintiff, and upon the amount sued for if the defendant obtains judgment.")

Defendant argues that the 25% cap on fees should be applied to the amount sued for plus the judgment amount in his favor, or $970,329.67, because he prevailed with respect to Plaintiff's claims and his counterclaims.  Twenty-five percent

43

of that would be $242,582.42.  Even considering only the
amount Plaintiff sued for, which is at minimum, "all amounts
[Plaintiff] paid [Defendant] under the Annuity Agreement",[28]
First Amended Compl. at 12, Defendant could recover up to
$217,582.42 (25% of $870,329.67) in fees.  The $127,446.40
recommended fee award falls well below $217,582.42.

Defendant also requests general excise tax ("General
Excise Tax") for the fee award.  The Court finds that
Defendant is entitled to recover GET (4.712%), which, based on
the recommended fee award, totals $6,005.27.  Annette K. v.
Hawaii Dep't of Educ., No. 12-00154 HG-BMK, 2013 WL 3731102,
at *3 (D. Haw. July 13, 2013) (citations and quotation
omitted) ("[G]enerally, it is common practice for district
courts to award general excise tax when awarding attorney's
fees.").

Having determined that fee award comports with HRS
§ 607-14's cap, and that Defendant is entitled to GET, the
Court recommends that the district court award Defendant
**$127,446.40** in attorneys' fees and **$6,005.27** in GET, for a

---

[28]  Under the Annuity Agreement, Plaintiff made one pro-
rata payment of $10,329.67 for the period May 15, 2004 through
June 30, 2004.  Plaintiff thereafter made quarterly payments
of $20,000.00 until the quarter ending June 30, 2015.  This
means that 43 quarterly payments were made plus the $10,329.67
pro-rata payment, for a total of $870,329.67.

total of **$133,451.67**.

III.      <u>Non-Taxable Expenses</u>

In addition to fees, Defendant seeks to recover $2,214.02 in non-taxable expenses pursuant to HRS § 607-14. Plaintiff did not oppose this request. Although HRS § 607-14 does not expressly authorize an award of non-taxable costs, such costs are recoverable. <u>BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.</u>, No. CIV. 09-00181 LEK-KS, 2015 WL 881577, at *20 (D. Haw. Feb. 27, 2015).

Defendant asks for Mr. Matayoshi's travel expenses incurred in connection with travel to California for Defendant and Mr. Little's depositions. Travel expenses may be recovered, <u>id.</u>, and it appears that these expenses were reasonable and necessary based on the documentation provided by Defendant. Mot., Ex. 6. The Court therefore finds that **$2,214.02** in non-taxable expenses are compensable and recommends that the district court award these expenses to Defendant.

IV.   <u>Pre-judgment Interest</u>

Defendant asks this Court to award $6,682.47 in pre-judgment interest pursuant to HRS §§ 636-16 and 478-2, which is a remedy he sought in his counterclaims. Plaintiff did not oppose this request.

45

Defendant asserts that because the Annuity Agreement does not provide an interest rate for overdue payments, a statutory rate of 10% applies.  Haw. Rev. Stat. § 478-2 ("When there is no express written contract fixing a different rate of interest, interest shall be allowed at the rate of ten per cent a year.").  There being no opposition, and Defendant having prevailed on his counterclaims, the Court finds that he is entitled to recover **$6,682.47** in pre-judgment interest.

CONCLUSION

In accordance with the foregoing, the Court HEREBY RECOMMENDS that Defendant's Motion for Attorneys' Fees, Related Non-Taxable Costs, and Prejudgment Interest, filed September 13, 2016, be GRANTED IN PART AND DENIED IN PART and that Defendant be awarded **$127,446.40** in attorneys' fee, **$6,005.27** in GET, **$2,214.02** in non-taxable expenses, and **$6,682.47** in pre-judgment interest.

IT IS SO FOUND AND RECOMMENDED.

DATED:  Honolulu, Hawaii, February 28, 2017.



           Kevin S.C. Chang
           United States Magistrate Judge

CIVIL NO. 15-00355 DKW-KSC; HONOLULU ACADEMY OF ARTS V. GREENE; FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT/COUNTERCLAIMANT JOEL ALEXANDER GREENE'S MOTION FOR ATTORNEYS' FEES, RELATED NON-TAXABLE COSTS, AND PREJUDGMENT INTEREST